James L. Greeley (SBN 218975)
  jgreeley@vgcllp.com
Alexander R. Safyan (SBN 277856)
  asafyan@vgcllp.com
**VGC, LLP**
1515 7th Street, No. 106
Santa Monica, California 90401
Telephone:  (424) 272-9885

Attorneys for Plaintiffs
Anaïs Ganouna and Frank & Anaïs, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAIS GANOUNA and FRANK & ANAIS, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE COLORS YOU LIKE, LLC and CINCO SPIRITS GROUP, LLC d/b/a CINCORO,<br><br>    Defendants. | Case No. 2:20-cv-04070<br><br>**COMPLAINT FOR:**<br><br>1. **COPYRIGHT INFRINGEMENT (17 U.S.C. § 101, *et seq.*)**<br>2. **FRAUD**<br>3. **CIVIL CONSPIRACY**<br>4. **UNFAIR COMPETITION**<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiffs Anaïs Ganouna ("Ms. Ganouna") and Frank & Anaïs, LLC ("Frank & Anaïs") (collectively, "Plaintiffs") bring this Complaint against Defendants The Colors You Like, LLC ("TCYL") and Cinco Spirits Group, LLC d/b/a Cincoro ("Cincoro") (collectively, "Defendants") and allege as follows:

**INTRODUCTION**

1. This is an action for copyright infringement, fraud, and unfair competition arising from Defendants' knowing and unlawful exploitation of Plaintiffs' creative work in connection with the launch of Cincoro's highly anticipated tequila brand in 2019.

2. Ms. Ganouna is a professional photographer who offers photography services through her company Frank & Anaïs. Ms. Ganouna, through Frank & Anaïs, was commissioned to do a photoshoot for Defendants in Mexico of the agave fields and plants, the tequila production process, and the tequila bottles and barrels, among other things, used for Cincoro's tequila.

3. TCYL, the production company that arranged the shoot, agreed with Frank & Anaïs ahead of time on a daily rate to pay it for Ms. Ganouna's time and labor. The parties did not negotiate the specific licensing/usage of Ms. Ganouna's photographs, which Ms. Ganouna understood would be negotiated later, after Cincoro had seen her photographs and decided on the type of usage it wanted.

4. The photoshoot was a major success. During the photoshoot, Cincoro personnel who were in attendance and saw Ms. Ganouna's photographs on her camera excitedly told Ms. Ganouna that they loved her photographs and could not wait to use them everywhere.

5. However, towards the end of the photoshoot and in the days after, when Ms. Ganouna attempted to negotiate a licensing fee with Defendants for Cincoro's licensing/usage of her photographs, Ms. Ganouna was told that she would not receive anything more than her day rate, that "none of [her] photos will be used … whatsoever," and that the "client [Cincoro] was aware" of the situation.

6. Several months later, in or around September 2019, Cincoro launched. Its launch was highly publicized, promoted by its high-profile ownership group and a widespread marketing campaign over the Internet, including through digital media, social media, and advertising.

7. Around this same time, Ms. Ganouna discovered that, despite the express representations that had been made to her by Defendants, her images were all over Cincoro's website, social media accounts, and paid advertising. Ms. Ganouna is informed and believes, and based thereon alleges, that Defendants intentionally misrepresented to her that her photographs would not be used (when they at all times intended to use her photographs) and were hoping that she would not have the desire or the resources to do anything about it.

8. Defendants have exploited Ms. Ganouna's professional photographs to promote Cincoro's high-end and ultra-premium tequila brand. They have done so without Ms. Ganouna's knowledge or consent and in clear and willful violation of Ms. Ganouna's and Frank & Anaïs's rights.

**PARTIES**

9. Plaintiff Anaïs Ganouna is an individual residing in Los Angeles County, California. Ms. Ganouna is a professional photographer who specializes in lifestyle, travel, and brand photography. She has done commercial photoshoots for global companies such as Samsonite, Odebrecht, and T.Y. Lin, and worked as a staff photographer for wine and spirits giant Pernod Ricard. Through this experience, Ms. Ganouna has been involved in—and negotiated herself—countless licensing deals for multiple types of photography usage, including specifically in the spirits category.

10. Plaintiff Frank & Anaïs, LLC is a California limited liability company with its principal place of business in Los Angeles County, California. Frank & Anaïs offers photography, digital marketing, and other brand-building services to businesses. Ms. Ganouna is the managing member of Frank & Anaïs.

11. On information and belief, Defendant The Colors You Like, LLC is a Connecticut limited liability company with its principal place of business in Weston, Connecticut. TCYL is a digital content agency that says it "can deliver your company, artist, event or brand anything and everything from full-length documentary style press kits for digital consumption to multi-camera produced live concerts for the big screen."

12. On information and belief, Defendant Cinco Spirits Group, LLC d/b/a Cincoro is a Delaware limited liability company with its principal place of business in Wilmington, Delaware. Cincoro is a spirits company that sources and sells high-end tequila, which it says is "uniquely [made by] using 100% Weber blue agave harvested from the Highland and Lowland appellations of Jalisco, Mexico."

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a) because the Court has original jurisdiction over Ms. Ganouna's claim for copyright infringement arising under 17 U.S.C. § 101, *et seq.*, and supplemental jurisdiction over Plaintiffs' fraud, civil conspiracy, and unfair competition claims arising under California law.

14. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. This Court has personal jurisdiction over Defendants because they conduct business in the State of California and/or purposefully avail themselves of the benefits and protections of the laws of the State of California. On information and belief, TCYL has an office in California and its founder and president, Torre Catalano, who had most of the relevant communications with Plaintiffs, works and lives in California. On information and belief, Cincoro contracted with TCYL for services and deliverables relating to the photoshoot in California. The discussions and negotiations between Frank & Anaïs, Ms. Ganouna, and Defendants regarding

- 3 -

the photoshoot and the licensing of Ms. Ganouna's photographs took place in California. Defendants also presented Ms. Ganouna with a draft licensing agreement that was governed by California law.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district and because Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A. Relevant Background and Events Surrounding the Photoshoot

17. In early June 2019, Torre Catalano, the founder and president of TCYL, contacted Ms. Ganouna to ask if she would be interested in doing a photoshoot for TCYL and Cincoro in Mexico. Mr. Catalano explained that TCYL had used a staff photographer for the project before contacting Ms. Ganouna but that Cincoro was unhappy with the quality of that photographer's images. Cincoro and TCYL had therefore decided that they wanted to use an independent stills photographer and license the images to be used by Cincoro. Ms. Ganouna was excited about the prospect of the photoshoot and a licensing agreement. Neither she nor Frank & Anaïs had ever worked with TCYL or Cincoro before.

18. Over the weeks of June 10 and June 17, 2019, TCYL made arrangements for the photoshoot with Ms. Ganouna and Frank & Anaïs over telephone and email. The shoot was scheduled to take place over five days from June 24-28, 2019. Although Ms. Ganouna's standard day rate for stills photography through Frank & Anaïs was $1900, she agreed to a heavily discounted day rate of $1000 as a favor to Mr. Catalano and because of an indication of future work with TCYL. Ms. Ganouna also brought her own camera equipment on the trip and did not charge TCYL or Cincoro a rental fee.

19. During the initial discussions between TCYL and Ms. Ganouna, licensing/usage rights were not raised. This was not surprising to Ms. Ganouna

- 4 -

1  since these rights are typically negotiated separately from a photographer's day rate
2  (which compensates the photographer for time and labor).  Ms. Ganouna also
3  understood that because Cincoro was unhappy with the previous photographer's
4  work, it would have to review and approve Ms. Ganouna's photographs before
5  deciding on and negotiating its scope of usage.

6       20.     During the photoshoot, Cincoro personnel on the trip, including Chief
7  Marketing Officer Russell Pareti and Vice President Chris Spake, expressed to Ms.
8  Ganouna that they loved her photographs and planned to use them everywhere,
9  including in a "full page ad campaign."  This *was* surprising to Ms. Ganouna
10 because at that point Ms. Ganouna still had not negotiated or agreed to any
11 licensing/usage rights.  Plaintiffs are informed and believe, and based thereon allege,
12 that TCYL either misrepresented to Cincoro (its client) that it had agreed on certain
13 licensing/usage rights with Ms. Ganouna or failed to inform Cincoro that this
14 remained an open item.

15      21.     On June 28, 2019, the last day of the trip, Ms. Ganouna sent a text
16 message to Mr. Catalano asking to set up a meeting to discuss Cincoro's usage of
17 her photographs.  Mr. Catalano responded that there was a "full buyout" of the
18 images, "[b]ut yes let's meet!"  When Ms. Ganouna responded that this had not
19 been made clear to her and that licensing photographs cost additional money, Mr.
20 Catalano immediately became defensive and condescending and wrote, among other
21 things, that the "rate is what it is"; that Ms. Ganouna should not "let [her] short term
22 greed get in the way of [her] long term greed"; that Ms. Ganouna was just "tired at
23 the end of a long shoot"; and that "Some jobs pay really well, and others a lot less.
24 It's up to everyone if they want to roll with it and be in the squad."

25      22.     On July 3, 2019, Ms. Ganouna sent an email to TCYL reiterating that
26 there had been no mention of—let alone an agreement on—usage when discussing
27 her day rate, which, again, was heavily discounted.  To demonstrate the market
28 value of the type of usage Cincoro was contemplating, Ms. Ganouna provided a

screenshot of a price quote generated by fotoQuote (the industry standard photography pricing software) for "Unlimited advertising and marketing usage" of one image in the U.S. plus one country for a three-year period. This quote was $24,579. Ms. Ganouna also provided an invoice of a licensing quote generated by fotoQuote for licensing 15 images within the scope contemplated by Cincoro. This invoice was for $114,433. Ms. Ganouna stated in her email that her "goal [was] to reach an agreement for fair compensation" for the intended use of her photographs and invited Mr. Catalano to discuss the matter further.

23. *Two minutes* after receiving this email, Mr. Catalano sent Ms. Ganouna a barrage of harassing and threatening text messages, stating in order: "Oh man that was dumb"; "Now you're getting nothing"; "You wanna dance let's go!"; "Lawyer up"; "Now I'm not paying you anything"; and "Don't bother sending the photos, I don't want them. I'll send another photographer down to pick up shots and you will get nothing." Ms. Ganouna tried to call Mr. Catalano, but he wrote her "Sorry can't talk, on the phone with the Mexican photographer who is doing the reshoots" and "We don't need your photos. Thanks." On information and belief, Defendants never engaged or sent another photographer to do reshoots. They used Ms. Ganouna's photographs without her knowledge or consent, as alleged in further detail below.

24. Later that day, Mr. Catalano called Ms. Ganouna and berated her over the phone with accusations, insults, and threats. These verbal attacks included, *inter alia*, that Ms. Ganouna was being selfish and trying to "extort" Mr. Catalano; that Mr. Catalano would "blacklist" and "blackball" Ms. Ganouna and let all his contacts know that she cannot be trusted; and that if she did not back down, Mr. Catalano would bring "his entire legal force" down upon her.

25. That same day, Mr. Catalano also responded to Ms. Ganouna's email with the licensing quotes, stating: "Not a chance Anais. No discussion. You shouldn't have taken the job then. Hire a lawyer if you'd like."

26. Meanwhile, Mr. Pareti of Cincoro emailed Ms. Ganouna and asked if she would be able to send her images on a rush basis so that Cincoro could use them in a presentation with its ownership group on July 8, 2019 in Las Vegas. Ms. Ganouna worked over the July 4th holiday to timely deliver the requested images, which she did on July 5, 2019. In her email containing the images, Ms. Ganouna informed Mr. Pareti about the licensing/usage dispute, but stated that she did not want to interfere with Cincoro's meeting and therefore, in good faith, was giving Cincoro permission to use the images for purposes of its meeting only.

27. On July 5, 2019, Mr. Catalano sent another series of text messages to Ms. Ganouna, stating: (1) "We already pulled stills from our video and sent to client [Cincoro]. *None of your photos will be used, and thus, there will be no need to license them….*"; and (2) "*The client is aware and none of your photos are being used, just ours.*" (Emphasis added.)

28. Over the subsequent two weeks, TCYL attempted to backtrack on its representation that "none of [Ms. Ganouna's] photos will be used" and convince Ms. Ganouna to agree to some scope of usage by Cincoro of her photographs. Ms. Ganouna attempted to negotiate with Cincoro and TCYL a reasonable licensing fee for such use. These attempts included, among other things, a conference call on July 8, 2019 between Ms. Ganouna, Allen Kelley (a senior producer at TCYL), and Mr. Pareti of Cincoro, to discuss a licensing agreement.

29. But Cincoro and TCYL sent Ms. Ganouna a draft agreement that contained multiple one-sided and oppressive terms, such as exclusivity, TCYL (not just Cincoro) being granted usage, and Ms. Ganouna having to obtain written permission from Defendants to use her own photographs in her portfolio. During this time, TCYL also refused to pay Frank & Anaïs Ms. Ganouna's day rate payment which she was indisputably owed, effectively holding the payment hostage until Ms. Ganouna agreed to a licensing deal.

30. On July 18, 2019, Ms. Ganouna sent an email to Cincoro and TCYL stating that the draft agreement they had presented to her was unacceptable and attaching an alternative proposed agreement. Four days later, on July 22, 2019, Mr. Catalano sent an email to Ms. Ganouna, stating: "*[W]e have decided to make no use whatsoever of your photographs*. Additionally, both the client [Cincoro] and I found your photos to be *beyond inadequate and of inferior quality*. The project has been assigned to a new photographer for re-shoots. We are returning your draft Contract unsigned." (Emphasis added.)

31. On information and belief, these representations were lies. Defendants had every intention of using Ms. Ganouna's photographs. They were excellent, high-quality photographs—Cincoro personnel even expressed this directly to Ms. Ganouna. Defendants never engaged or sent a new photographer for reshoots. They used Ms. Ganouna's photographs without her knowledge or consent.

32. On or around July 26, 2019, Defendants finally sent a check to Frank & Anaïs for Ms. Ganouna's day rate payment. They did not pay Ms. Ganouna anything for the licensing/usage of her photographs.

**B.  Ms. Ganouna Discovers Defendants' Infringement**

33. In or around September 2019, Cincoro officially launched. Around this time, Ms. Ganouna discovered that, despite Defendants' representations to her several months earlier, Cincoro was using a number of her images on its website. True and correct copies of Ms. Ganouna's photographs and screenshots of the corresponding images on Cincoro's website are attached hereto as Exhibit A.

34. Ms. Ganouna also discovered that Cincoro was using her images on its social media accounts, including on Instagram, Facebook, and Twitter. True and correct copies of Ms. Ganouna's photographs and screenshots of the corresponding images on Cincoro's social media accounts are attached hereto as Exhibit B.

35. Cincoro's usage was not limited to its own website and social media accounts. Ms. Ganouna also saw her images being used in paid advertising (i.e.,

sponsored ads) and by third-party vendors to whom Cincoro had evidently distributed her photographs without her permission. True and correct copies of Ms. Ganouna's photographs and screenshots of the corresponding images used in paid advertising and by third-party vendors are attached hereto as Exhibit C.[1]

36. Ms. Ganouna's photographs depicted in Exhibits A, B, and C are collectively referred to hereinafter as the "Photographs."

**C.     Defendants Deny Responsibility and Offer False Justifications**

37. Prior to filing this lawsuit, Ms. Ganouna, through counsel, sent a letter to Defendants demanding compensation for their use of the Photographs and asking that Cincoro cease using the Photographs until the parties reach a resolution.

38. In response to Ms. Ganouna's letter, Defendants feigned ignorance and pointed the finger at one another. Mr. Catalano, on behalf of TCYL, attempted to deflect blame by stating in an email, "Sounds like this is between cincoro and anais." Mr. Pareti responded on behalf of Cincoro and also attempted to deflect blame, stating "All photos and videos I received were from The Colors You Like."

39. Mr. Catalano also stated, in a separate email, that TCYL had "meta data" to supposedly prove that every photograph Defendants used was pulled from a video TCYL shot, and was not Ms. Ganouna's photograph. On information and belief, this was another lie. TCYL never sent the purported metadata. In any event, even if such metadata existed, it would not prove that Ms. Ganouna's Photographs were not used without her permission. The images used on Cincoro's website, social media accounts, and sponsored ads appear to be either the actual Photographs taken by Ms. Ganouna or extremely close derivatives thereof. Moreover, in many cases where Ms. Ganouna was taking photographs and TCYL was shooting video,

---

[1] As seen in the Exhibits, some of Ms. Ganouna's photographs used by Cincoro have been cropped or otherwise retouched. This is standard practice in commercial photography, as every image goes through a retouching process before being publicly released.

- 9 -

Ms. Ganouna dressed the sets, staged the shots, and placed/directed the subjects of the shots.  And it is literally impossible that every image used by Cincoro came from a video and was not actually one of Ms. Ganouna's Photographs—video was not shot of every scene Ms. Ganouna shot.

40. As of the date of this filing, Cincoro continues using the Photographs without Ms. Ganouna's authorization or consent.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Copyright Infringement – 17 U.S.C. § 101, *et seq.*

**(By Ms. Ganouna Against All Defendants)**

41. Ms. Ganouna incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 40 above and Exhibits A-C as though fully set forth herein.

42. At all relevant times herein, Ms. Ganouna was the owner of the copyrights in the Photographs.  These copyrights were registered with the United States Copyright Office on or around July 3, 2019 and given the Registration Number VAu 1-363-33.

43. Defendants have reproduced, prepared derivative works based upon, distributed, and/or publicly displayed Ms. Ganouna's protected work and/or derivatives of Ms. Ganouna's protected work, without Ms. Ganouna's consent.

44. Defendants infringed Ms. Ganouna's copyrights in the Photographs by reproducing and publicly displaying the Photographs, copies of the Photographs, or derivative works based upon the Photographs, over the Internet, including on Cincoro's website and social media accounts and by distributing the Photographs to advertisers and third-party vendors.  Defendants are not, and have never been, licensed or otherwise authorized to reproduce, publicly display, distribute, and/or use the Photographs.

45. Defendants indisputably had access to Ms. Ganouna's Photographs. Cincoro personnel saw many of the Photographs on Ms. Ganouna's camera during the photoshoot. Ms. Ganouna transferred the RAW (unedited) images to TCYL's hard drive at the end of the photoshoot in Mexico. Ms. Ganouna also sent the Photographs directly to TCYL and Cincoro via email after the photoshoot.

46. The screenshots of the images contained in Exhibits A-C are substantially similar to Ms. Ganouna's Photographs.

47. Defendants' acts violated Ms. Ganouna's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501.

48. Defendants' acts of infringement (and substantial contributions to acts of infringement) of Ms. Ganouna's protected work were done knowingly, willfully, and in disregard of Ms. Ganouna's rights in that work. These acts of infringement were done without Ms. Ganouna's consent and solely for Defendants' personal and financial gain.

49. Furthermore, Defendants failed to exercise their right, duty, and ability to supervise persons within their control to prevent such persons from infringing Ms. Ganouna's protected work and did so with the intent to further their personal and financial interest in the infringement of that work. Accordingly, Defendants have directly, contributorily, and vicariously infringed Ms. Ganouna's protected work.

50. As a direct and proximate result of Defendants' misconduct, Ms. Ganouna has suffered damages in an amount to be proven at trial. Ms. Ganouna is entitled to recover her actual damages and lost profits pursuant to 17 U.S.C. § 504(b). Alternatively, Ms. Ganouna is entitled to recover statutory damages up to $150,000 per work infringed due to Defendants' willful infringement pursuant to 17 U.S.C. § 504(c). Ms. Ganouna is also entitled to her attorneys' fees and costs and all other relief allowed under the Copyright Act.

51. Defendants' infringement has also caused, and is continuing to cause, substantial, immediate, and irreparable harm for which there is no adequate remedy at law. Unless this Court enjoins and restrains Defendants from continuing to infringe Ms. Ganouna's protected work, this harm will continue. Accordingly, Ms. Ganouna is entitled to preliminary and permanent injunctive relief restraining Defendants from further infringement.

## SECOND CLAIM FOR RELIEF

### FRAUD

**(By Ms. Ganouna Against TCYL)**

52. Ms. Ganouna incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 51 above and Exhibits A-C as though fully set forth herein.

53. Beginning in or around July 2019, TCYL made numerous false representations to Ms. Ganouna. These misrepresentations included, *inter alia*:

    a. On July 3, 2019, Mr. Catalano on behalf of TCYL stating in text messages to Ms. Ganouna: "Don't bother sending the photos, I don't want them. I'll send another photographer down to pick up shots …."

    b. On July 5, 2019, Mr. Catalano on behalf of TCYL stating in text messages to Ms. Ganouna: (i) "None of your photos will be used, and thus, there will be no need to license them"; and (ii) "The client is aware and none of your photos are being used, just ours."

    c. On July 22, 2019, Mr. Catalano on behalf of TCYL stating in an email to Ms. Ganouna: "[W]e have decided to make no use whatsoever of your photographs. Additionally, both the client and I found your photos to be beyond inadequate and of inferior

COMPLAINT

quality. The project has been assigned to a new photographer for re-shoots."

54. TCYL knew at the time it made these representations, through its founder and president Mr. Catalano, that they were false. On information and belief, TCYL (and Cincoro) always wanted Ms. Ganouna's Photographs; had no intention of engaging and sending, and never did engage or send, another photographer to Mexico to do reshoots; were pleased with the content and quality of Ms. Ganouna's Photographs; always intended to use Ms. Ganouna's Photographs; and, in fact, used Ms. Ganouna's Photographs without her knowledge or consent.

55. TCYL made these misrepresentations with the intent that Ms. Ganouna would rely on them. On information and belief, TCYL (and Cincoro) did not want to pay Ms. Ganouna the cost of licensing the Photographs for the use contemplated by Cincoro—i.e., website, social media, and digital advertising.

56. Ms. Ganouna reasonably and justifiably relied on TCYL's misrepresentations to her detriment.

57. As a direct and proximate result of TCYL's conduct, Ms. Ganouna suffered damages in an amount to be proven at trial. On information and belief, TCYL (and Cincoro) has benefitted from the unlicensed and unauthorized use of Ms. Ganouna's high-quality Photographs to promote Cincoro's tequila brand.

58. TCYL's conduct was done with oppression, fraud, or malice, and Ms. Ganouna is therefore also entitled to an award of punitive damages.

## THIRD CLAIM FOR RELIEF
## CIVIL CONSPIRACY
**(By Ms. Ganouna Against All Defendants)**

59. Ms. Ganouna incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 58 above and Exhibits A-C as though fully set forth herein.

60. On information and belief, TCYL and Cincoro formed a civil conspiracy to commit fraud against Ms. Ganouna.

61. Cincoro was aware and had actual knowledge of the dispute concerning the licensing/usage of Ms. Ganouna's Photographs. On July 5, 2019, Mr. Catalano stated in text messages to Ms. Ganouna: (i) "None of your photos will be used, and thus, there will be no need to license them"; and (ii) "*The client is aware* and none of your photos are being used, just ours." (Emphasis added.) The "client" Mr. Catalano was referring to was Cincoro.

62. Ms. Ganouna also emailed Cincoro on July 5, 2019 and directly informed it about the dispute. Cincoro was then involved in negotiations with Ms. Ganouna over a potential licensing agreement. Cincoro participated in a conference call with Ms. Ganouna on July 8, 2019 to discuss this potential licensing agreement. And on July 22, 2019, Mr. Catalano stated to Ms. Ganouna: "[W]e have decided to make no use whatsoever of your photographs. Additionally, *both the client and I* found your photos to be beyond inadequate and of inferior quality. The project has been assigned to a new photographer for re-shoots." (Emphasis added.) Again, the "client" Mr. Catalano was referring to was Cincoro.

63. The above representations were fraudulent, as alleged above in this Complaint.

64. Cincoro agreed to, consented to, and participated in the fraud against Ms. Ganouna in furtherance of the conspiracy. On information and belief, it knew that the representations being made to Ms. Ganouna about her Photographs not being used, her Photographs supposedly being "beyond inadequate and of inferior quality," and a new photographer doing reshoots, were false. It was aware that no agreement had been reached with Ms. Ganouna for the licensing/usage of her Photographs. Yet, Cincoro exploited Ms. Ganouna's Photographs by publishing them on its website, social media accounts, and paid advertising. Cincoro did so

without ever informing Ms. Ganouna, obtaining her consent, or paying her a reasonable licensing fee for such use.

65. As a direct and proximate result of Defendants' conspiracy and actions, Ms. Ganouna was damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**Unfair Competition – Cal. Bus. & Prof. Code § 17200,** *et seq.*

**(By All Plaintiffs Against All Defendants)**

66. Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1 through 65 above and Exhibits A-C as though fully set forth herein.

67. California Business and Professions Code section 17200 prohibits unfair competition, which it defines as "any unlawful, unfair or fraudulent business act or practice . . . ."

68. By engaging in the acts alleged herein, Defendants have engaged in unlawful, unfair, and/or fraudulent business acts or practices in violation of California Business and Professions Code sections 17200, *et seq*. Such conduct includes, as alleged above in this Complaint, Defendants' infringement of Ms. Ganouna's copyrights in the Photographs, interference with Plaintiffs' ability to market and sell the rights to the Photographs, making false representations and/or conspiring to commit fraud with respect to the use of the Photographs, and failing to give fair and due compensation to Plaintiffs for the use of the Photographs.

69. As a direct and proximate result of Defendants' unfair competition, Defendants have unjustly enriched themselves by obtaining profits, taking credit for Plaintiffs' work, and depriving Plaintiffs of compensation to which they are rightly entitled. Accordingly, Plaintiffs entitled to restitution in an amount to be proven at trial.

70. Defendants' unfair competition has also caused, and is continuing to cause, substantial, immediate, and irreparable harm for which there is no adequate

remedy at law.  Unless this Court enjoins and restrains Defendants from continuing to infringe Plaintiffs' rights, this harm will continue.  Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief restraining Defendants from further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For an award of all damages that Plaintiffs have sustained, and will sustain, as a result of the acts complained of herein;

2. For preliminary and permanent injunctive relief enjoining Defendants and all persons acting in concert or participation with them from reproducing, publicly displaying, or distributing the Photographs and any other act that infringes upon Plaintiff's copyrights;

3. For preliminary and permanent injunctive relief enjoining Defendants and all persons acting in concert or participation with them from engaging in further acts of unfair competition;

4. For an award of attorneys' fees and costs;

5. For an award of pre- and post-judgment interest; and

6. For such other and further relief as the Court may deem just and proper.

Dated:  May 4, 2020

**VGC, LLP**

By: _____

James L. Greeley
Alexander R. Safyan

Attorneys for Plaintiff
Anaïs Ganouna and Frank & Anaïs, LLC

## DEMAND FOR JURY TRIAL

Plaintiff Anaïs Ganouna hereby demands a jury trial on all issues so triable.

Dated: May 4, 2020

**VGC, LLP**

By: _/s/ Alexander R. Safyan_

James L. Greeley
Alexander R. Safyan

Attorneys for Plaintiff
Anaïs Ganouna and Frank & Anaïs, LLC